# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT SHIPP,       :
             :
   Plaintiff,       :   Civil Action No.:  19-1733 (RC)
             :
   v.         :   Re Document No.:  2
             :
HUGH J. HURWITZ, *et al.*,    :
             :
   Defendants.      :

## MEMORANDUM OPINION

**DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

## I. INTRODUCTION

Plaintiff Robert Shipp, a convicted felon currently serving a thirty-year sentence for drug-related crimes and scheduled for release in the next few weeks, comes before this Court seeking to compel Defendants the Bureau of Prisons ("BOP") and its acting director, Hugh J. Hurwitz, to comply with the good conduct time credits provision of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. In his complaint, Shipp contends that the BOP is violating the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, by refusing to comply with the First Step Act, which amends the U.S. Code to extend good conduct time credit available to prisoners. Shipp moves for a temporary restraining order and preliminary injunction ordering Defendants to both 1) immediately recalculate available good time credit for all prisoners in BOP custody, and 2) immediately release from custody those prisoners with release dates that have already passed. Because Congress unambiguously delayed implementation of the relevant subsection of the Act until a new risk and needs assessment system is released by the Attorney

General, and that system has not yet been released, the Court concludes that Plaintiff's claim lacks merit and denies the motion.

## II.  BACKGROUND

### A.  Incarceration Good Conduct Time Credit and the First Step Act

When serving a sentence of incarceration, federal inmates can be credited time towards the completion of their sentence if they "display[] exemplary compliance with institutional disciplinary regulations."  18 U.S.C. § 3624(b).  Prior to the passage of the First Step Act, 18 U.S.C. § 3624(b) provided that prisoners could receive "credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment."  *Id.*  In interpreting this statute, the BOP "implemented a calculation methodology that granted good time only for a person's time spent in prison, as opposed to the duration of the sentence imposed by the court."  Compl. ¶ 13, ECF No. 1 (citing *Barber v. Thomas*, 560 U.S. 474, 476–77 (2010)).  For example, a prisoner sentenced to ten years of imprisonment but set to be released after only nine years due to good behavior could receive good time credit only for the nine years actually served, and not for the tenth year of the sentence imposed by the Court.  *See Barber*, 560 U.S. at 478–79 (illustrating good time credit earned under BOP interpretation in a hypothetical ten-year sentence).  Functionally, this resulted in prisoners being eligible for at most 47 days of good time credit per year of their court-ordered sentence.  *See id.*; Compl. ¶ 15.

On December 21, 2018, President Donald J. Trump signed the First Step Act into law. *See generally* First Step Act, 132 Stat. at 5194.  The Act, which introduces a wide range of amendments aimed at criminal justice reform, provides for the creation of a new risk and needs assessment system for prisoners, to be developed and released by the Attorney General "[n]ot

later than 210 days after the date of enactment [of the Act]." First Step Act § 101(a). The First

Step Act also amends the good time credit provision, with Section 102(b)(1)(A) of the Act

amending 18 U.S.C. § 3624(b) to now provide that a prisoner "may receive credit towards the

service of the prisoner's sentence of up to 54 days *for each year of the prisoner's sentence*

*imposed by the court.*" First Step Act § 102(b)(1)(A) (emphasis added). However, Section

102(b)(2) of the Act notes that "[t]he amendments made by this subsection shall take effect

beginning on the date that the Attorney General completes and releases the risk and needs

assessment system . . . added by section 101(a)." *Id.* § 102(b)(2).

### B. Plaintiff's Incarceration and Projected Release

Plaintiff Robert Shipp is an Illinois resident currently in the custody of the Bureau of

Prisons. Compl. ¶¶ 1–2, ECF No. 1. In 1993, Shipp was convicted of multiple drug-related

crimes and sentenced to life imprisonment. *See id.* ¶¶ 19–21; *see generally* Docket, *United

States v. Shipp*, No. 1993-cr-350 (N.D. Ill.). Shipp's sentence was reduced to a thirty-year term

of imprisonment on February 26, 2015. Compl. ¶ 22. According to Shipp, on May 7, 2019, the

BOP calculated his pre-First Step Act projected release date to be November 26, 2019, based on

Shipp's remaining sentence adjusted for his good time credit. *Id.* ¶ 25. As a result of the First

Step Act's extension of good time credit, Shipp alleges that the BOP recalculated his projected

release date on June 12, 2019, to now provide for a "'First Step Act Release' date of July 19,

2019." *Id.* ¶ 27. However, Shipp also alleges that, based on the projected good time credit he

will have earned as of July 19, 2019, his release date under the First Step Act would be May 6,

2019. *Id.* ¶ 28. Shipp thus contends that "the BOP has already recalculated [his] sentence

[pursuant to the First Step Act], but refuses to apply that calculation until July 19th, thereby

keeping him confined for what will be 74 days beyond what BOP itself has calculated to be his release date." *Id.* ¶ 29.

### C. Procedural History

Shipp filed a complaint against Hurwitz and the BOP pursuant to the APA on June 14, 2019. *See* Compl. Shipp alleges that 18 U.S.C. § 3624(b), as amended by the First Step Act, requires the BOP to recalculate good time credit for all prisoners by crediting up to 54 days per year of each prisoner's sentence, but that the BOP "continues to calculate good time credit pursuant to [its old regulations] . . . and refuses to apply the statutory change." Compl. ¶ 38. This, he contends, is agency action unlawfully withheld pursuant to 5 U.S.C. § 706(1), and the Court should compel the BOP to comply with the revised statute. *See id.* ¶¶ 43, 44.

On the same day, Shipp filed a motion for a temporary restraining order and preliminary injunction, asking the Court to compel Defendants to recalculate the good time credit for all prisoners in its custody and to begin releasing those with release dates that have already passed. Pl.'s Emergency Mot. TRO & Prelim. Inj. 1, ECF No. 2. Defendants filed their opposition on June 24, 2019. Defs.' Opp'n, ECF No. 6. Shipp filed his reply on June 27, 2019. Pl.'s Reply, ECF No. 7. Shipp's motion is now ripe for review.

### III. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). To obtain preliminary injunctive relief, a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public's interest." *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (quoting *Sherley*

*v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011)). "[T]he movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014) (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009)). "The likelihood of success requirement is the most important of these factors," *Elec. Privacy Info. Ctr. v. FTC*, 844 F. Supp. 2d 98, 101 (D.D.C. 2012) (citing *Biovail Corp. v. FDA*, 448 F. Supp. 2d 154, 159 (D.D.C. 2006)), and a court "need not proceed to review the other three . . . factors" when a plaintiff has failed to show likelihood of success on the merits, *id.* (quoting *Ark. Dairy Coop. Ass'n v. Dep't of Agric.*, 573 F.3d 815, 832 (D.C. Cir. 2009)). Similarly, "a court may refuse to issue an injunction without considering any other factors when irreparable harm is not demonstrated." *GEO Specialty Chems., Inc. v. Husisian*, 923 F. Supp. 2d 143, 147 (D.D.C. 2013). And finally, "[t]he standard that applies to preliminary injunctions also applies to temporary restraining orders." *Gilliard v. McWilliams*, 315 F. Supp. 3d 402, 412 (D.D.C. 2018) (quoting *Experience Works, Inc. v. Chao*, 267 F. Supp. 2d 93, 96 (D.D.C. 2003)).

## IV. ANALYSIS

Shipp moves for a temporary restraining order and preliminary injunction directing Defendants to comply with 18 U.S.C. § 3624(b), as revised by the First Step Act. *See* Pl.'s Mem. Supp. Emergency Mot. 1, ECF No. 2. Shipp represents that Section 102(b)(2) of the First Step Act, while appearing on its face to delay implementation of Section 102 until after the release of the new risk and needs assessment system, "simply do[es] not apply to Section 102(b)(1)(A)," and instead applies only to the two other amendments contained in Section 102. Pl.'s Mem. Supp. 8. As a result, Shipp argues, the amendment in Section 102(b)(1)(A) is already operative and Defendants are unlawfully failing to revise their good time credit calculations. *See*

*id.* In opposition, Defendants argue both that Shipp has not shown irreparable harm because his claim is not ripe, and that he has not shown likelihood of success on the merits because this action should have been brought as a habeas corpus case, and, in any event, the Act makes clear that Section 102(b) has been delayed and is not yet operative. *See* Defs.' Opp'n 4–12. The Court first addresses Defendants' ripeness argument, which touches on its subject matter jurisdiction over this case, before discussing Shipp's likelihood of success on the merits. While it finds that Shipp brings a ripe APA claim and is not required to pursue it through habeas proceedings, the Court agrees with Defendants that Section 102(b)(2) unambiguously delays the applicability of Section 102(b)(1)(A) until after the release of the risk and needs assessment system. The Court accordingly denies Shipp's motion for injunctive relief.

### A. Shipp Brings a Ripe APA Claim

First, the Court briefly addresses Defendants' argument that Shipp's motion should be denied on ripeness grounds. Because Section 102(b)(2) delayed its effective date, Defendants contend, Section 102(b)(1)(A) of the First Step Act has not yet taken effect and Shipp's claim premised on that section of the Act is premature. *See* Defs.' Opp'n 4–5. The Court disagrees.

Under the constitution, federal courts are restricted to deciding cases and controversies. U.S. Const. art. III, § 2. As a result, courts lack subject matter jurisdiction to consider claims that are not ripe for review. "Part of the doctrine is subsumed into the Article III requirement of standing, which requires a petitioner to allege . . . an injury-in-fact that is 'imminent' or 'certainly impending.'" *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012) (quoting *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427–28 (D.C. Cir. 1996)). But "even if a case is 'constitutionally ripe,' though, there may also be 'prudential reasons for refusing to exercise jurisdiction.'" *Id.* (quoting *Nat' Park Hospitality Ass'n v. Dep't*

*of Interior*, 538 U.S. 803, 808 (2003)).  The Supreme Court has explained that the ripeness

doctrine is intended "to prevent the courts, through avoidance of premature adjudication, from

entangling themselves in abstract disagreements over administrative policies, and also to protect

the agencies from judicial interference until an administrative decision has been formalized and

its effects felt in a concrete way."  *CTIA-The Wireless Ass'n v. F.C.C.*, 530 F.3d 984, 987 (D.C.

Cir. 2008) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)).  Under prudential

ripeness, courts must therefore "apply a familiar two-pronged balancing test: first, a court must

evaluate the 'fitness of the issue for judicial decision[,]' and second, a court must consider 'the

hardship to the parties of withholding [its] consideration.'"  *Delta Air Lines, Inc. v. Export-*

*Import Bank of U.S.*, 85 F. Supp. 3d 250, 269 (D.D.C. 2015) (quoting *Abbott Labs.*, 387 U.S. at

149).

    Here, Defendants contend that Shipp "cannot demonstrate any harm . . . because the

provision of the First Step Act under which he seeks relief does not take effect until July 19,

2019."  Defs.' Opp'n 4.  Defendants represent that "[o]n its face, the section of the First Step Act

relied upon is not yet effective," and therefore that Shipp "has not been denied any benefit

thereof" and cannot have suffered any injury.  *Id.* at 5.  But the date of effectiveness of Section

102(b)(1)(A) of the First Step Act, and Defendants' obligations pursuant to it, is precisely what

Shipp is challenging through this lawsuit.  Just because Defendants believe that, "on its face,"

Section 102(b)(1)(A) is not yet effective, does not prevent Shipp from challenging that

interpretation of the Act.  Shipp is presenting the Court with a clearly delineated, present

controversy: he alleges that the section is already operative and that Defendants are failing to

comply with it, thereby creating a very real injury to him and all other prisoners for whom

Defendants are allegedly incorrectly making good time credit calculations.  That claim does not

"rest[] upon contingent future events," Defs.' Mem. Supp. 5 (quoting *Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003)), and the Court therefore finds that Shipp has alleged the required injury in fact. Neither is prudential ripeness a bar to the Shipp's claim, when the claim involves a purely legal issue for which no further factual development is needed, and Shipp and other inmates allegedly suffer hardship for every day the issue is not resolved. Because it finds that Shipp's claim is ripe, the Court will not deny his motion for emergency injunctive relief on that ground.

### B. Shipp Is Not Required to Bring His APA Challenge as a Habeas Petition

Next, Defendants appear to argue that Shipp's claim fails because he did not bring it as part of a habeas corpus petition, which would have to be brought in a different district and against a different defendant. *See* Defs.' Mem. Supp. 12. Defendants do not explicitly connect this argument to the preliminary injunction standard, but because it touches on Shipp's likelihood of success on the merits, the Court considers it here. Although this is a close issue, the Court again disagrees with Defendants.

In a line of cases dating back almost fifty years, the Supreme Court has held that "Congress has channeled state prisoners' claims for relief—however styled—into habeas alone if the prisoners seek a remedy that is at the 'core of habeas.'" *Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660, 662 (D.C. Cir. 2013) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005)). This means that state prisoners cannot "challenge 'the fact or duration of [their] confinement'" outside of a habeas proceeding. *Id.* at 663 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)). The D.C. Circuit has extended that rule to claims brought by federal prisoners as well. *See Chatman-Bey v. Thornburgh*, 864 F.2d 804, 808–10 (D.C. Cir. 1988); *Davis*, 716 F.3d at 666. The Circuit originally construed the habeas channeling rule for federal prisoners as requiring all

claims for which success on the merits "would have a merely probabilistic impact on the duration of custody" to proceed in habeas. *Razzoli v. Fed. Bureau of Prisons*, 230 F.3d 371, 373 (D.C. Cir. 2000); *see Chatman-Bey*, 864 F.2d at 809–10. But in light of more recent Supreme Court decisions, the Circuit has now adopted the much narrower rule that "a federal prisoner need bring his claim in habeas only if success on the merits will 'necessarily imply the invalidity of confinement or shorten its duration.'" *Davis*, 716 F.3d at 666 (quoting *Wilkinson*, 544 U.S. at 82) (overruling *Razzoli* and mirroring the habeas channeling rule for federal prisoners on the rule applicable to state prisoners); *see also id.* at 665 (noting that the narrower rule "channel[s] into habeas only claims that would guarantee a speedier release from prison").

Here, Defendants contend that because Shipp "believes he is 'entitled to immediate release from custody,'" he challenges the duration of his confinement and his claim must be brought in a habeas proceeding. Defs.' Opp'n 12 (quoting Compl. ¶ 40). This is a close call. But because Shipp brings an action challenging the agency-wide interpretation of a statute, rather than an agency determination relating to his particular sentence, the Court is unconvinced. In applying the habeas channeling rule, courts in this circuit and elsewhere have recognized in the parole context that while "any APA action to overturn a particular parole decision on essentially 'abuse of discretion' grounds must be brought under habeas," *Hill v. U.S. Parole Comm'n*, No. 16-cv-1476 (JEB), 2017 WL 2414446, at *13 (D.D.C. June 2, 2017) (quoting *Wallace v. Christensen*, 802 F.2d 1539, 1550 (9th Cir. 1986), a prisoner can bring an APA challenge claiming "that parole officials are apt to use incorrect rules when resolving a future application," *id.* (emphasis omitted) (quoting *Richmond v. Scibana*, 387 F.3d 602, 605 (7th Cir. 2004). The latter is essentially what Shipp is attempting here in the context of the good time credit calculation. Defendants selectively cite from the complaint, where Shipp indicates that "[i]f the

BOP applied 18 U.S.C. § 3624(b) to [him] he would be entitled to immediate release from custody." Compl. ¶ 40. But release or a reduction in his sentence is not the remedy Shipp asks for. Shipp is not asking for a recalculation of his own good time credit, or of his projected release date. Instead, Shipp asks for the Court to "compel the BOP to comply with 18 U.S.C. § 3624(b)" pursuant to the APA. Compl. ¶ 44 (internal quotation marks omitted). As Shipp points out in his reply, success on the merits of this APA claim "does not *guarantee* that anyone will be released from prison, including Mr. Shipp himself." Pl.'s Reply 5. All Shipp will obtain if he prevails on the claim is an order from this Court compelling Defendants to calculate his, and other prisoners', good time credit according to 18 U.S.C. § 3624(b) as revised by the First Step Act.

To be sure, everyone expects that this recalculation would most likely result in an earlier release date. And the complaint makes clear Shipp's underlying motivation for this APA challenge—if the BOP applied the statute correctly, he believes that "he would be entitled to immediate release." Compl. ¶ 40. But even if Shipp prevailed, Defendants would retain their discretion in applying the statute, and could recalculate a projected release date based on the amended § 3624(b) that could be earlier, or later, than his pre-First Step Act projected release date. Again, similar suits brought in the parole context are instructive. *See, e.g.*, *Wilson v. Fullwood*, 772 F. Supp. 2d 246, 259 – 60 (D.D.C. 2011); *Sellmon v. Reilly*, 551 F. Supp. 2d 66, 83–84 (D.D.C. 2008). Challenges to prior parole proceeding that "seek relief that will render invalid the state procedures used to deny parole eligibility . . . and parole suitability" need not be brought as habeas petitions, courts have explained, because success on such claims would "[not] necessarily spell speedier release." *Sellmon*, 551 F. Supp. 2d at 84 (quoting *Wilkinson*, 544 U.S. at 82). Instead, prevailing on their claims would allow prisoners to "gain 'at most a new parole

hearing at which . . . . [the USPC] may, in [its] discretion, decline to shorten [their] prison term[s]." *Id.* (quoting *Wilkinson*, 544 U.S. at 82). The Supreme Court explained in *Wilkinson* that it did not matter whether such prisoners "attack their parole-eligibility proceedings . . . only because they believe that victory on their claims will lead to speedier release." *Wilkinson*, 544 U.S. at 78. Such an argument is a "jump from a true premise (that in all likelihood the prisoners hope these actions will help bring about earlier release) to a faulty conclusion (that habeas is their sole avenue for relief)." *Id.*

Here, as in the parole eligibility context, it is clear that Shipp believes recalculation of his good time credit will result in earlier release—and such belief might well be warranted when the BOP appears to have already prepared a recalculation of his good time credit pursuant to the First Step Act that provides for an earlier release. But while there may be an extremely high probability that Shipp's sentence would be reduced if he prevails, success on the merits would still only entitle Shipp to have the BOP recalculate his good time credits in compliance with the statute, and in its own discretion. Because success on the merits would not "guarantee a speedier release from prison," *Davis*, 716 F.3d at 664, the Court finds that Shipp's claim does not sound in habeas and that he was not required to bring it through a habeas proceeding.

## C. Section 102(b)(1)(A) of the First Step Act Has Not Yet Taken Effect

Finally, the Court considers the central argument of Defendants' opposition, that Shipp's claim fails because Congress has explicitly delayed the effective date of the relevant section of the First Step Act. *See* Defs.' Opp'n 6. According to Defendants, Shipp "asks the Court to adopt a disingenuous interpretation of the Act's plain text," when the text "most naturally" points to the effective date for the amendment to § 3624(b) being delayed. *Id.* at 8. Shipp retorts that it is Defendants who misconstrue the First Step Act and provide an "absurd" interpretation, Pl.'s

Reply 10, an interpretation that he argues is further contradicted by both canons of statutory construction and the Act's legislative history, *id.* at 10–12. Here, the Court must agree with Defendants. Shipp's arguments to the contrary notwithstanding, the statute unambiguously delays implementation of Section 102(b)(1)(A) of the First Step Act until after the development and release of the risk and needs assessment system. The Court accordingly finds that Shipp is not likely to succeed on the merits of his APA claim, and it denies Shipp's motion for preliminary injunctive relief.[1]

A cursory examination of the text of the First Step Act unequivocally indicates that the relevant section of the Act is not yet in effect. As discussed above in part II.A., Section 102(b)(1)(A) of the First Step Act amends 18 U.S.C. § 3624(b) to provide that a prisoner "may receive credit towards the service of the prisoner's sentence of up to 54 days for each year of the prisoner's sentence imposed by the court." First Step Act § 102(b)(1)(A). However, Section 102(b)(2) of the Act provides that "[t]he amendments made by this subsection shall take effect beginning on the date that the Attorney General completes and releases the risk and needs assessment system . . . added by section 101(a)." *Id.* § 102(b)(2). By the plain meaning of its text, there is no other way to read Section 102(b)(2) than as delaying the effectiveness of Section 102(b) altogether until the release of the risk and needs assessment system. For that reason, the argument advanced by Shipp has already been rejected by a multitude of courts since the passage of the Act. *See, e.g.*, *United States v. Murgia*, No. 3:10-cr-0076-01-HRH, 2019 WL 2236067, at *2 (D. Ala. May 22, 2019) (rejecting argument, noting that "[o]ther district courts around the

---

[1] Somewhat perplexingly, Defendants have opposed Shipp's motion on the ground that his claim is meritless but have not moved to dismiss. Although it finds that Shipp cannot prevail on his claim, the Court will therefore not dismiss this case. As this case appears to be poised to become moot shortly, the Court does not expect the parties to expend time and energy briefing a motion to dismiss that covers the same ground.

country have reached the same conclusion," and listing cases); *Roy v. U.S. Bureau of Prisons*, No. 2:19-cv-59-RMP, 2019 WL 1441622, at *1 (E.D. Wash. Apr. 1, 2019) (noting that "the First Step Act does not yet authorize the relief that [Plaintiff] seeks"); *Rizzolo v. Puentes*, No. 1:19-cv-00290-SKO (HC), 2019 WL 1229772, at *3 (E.D. Cal. Mar. 15, 2019) ("Petitioner is correct that Section 102(b)(1) . . . amended 18 U.S.C. § 3624(b) to permit federal inmates to earn 54 days of good time conduct for each year of the sentence imposed. However, this provision has not yet taken effect.").

Shipp does not address these cases, nor does he provide a convincing argument for rejecting the clear command of the Act's plain text. Shipp asserts that delaying the effectiveness of the amendment "makes no sense . . . in light of the clearly stated Congressional intent to rectify the BOP's previous actions in calculating good time credit." Pl.'s Reply 10. He urges the application of the rule of lenity in his favor because "[a]t worst, the statute is silent as to the effective date for t[he] . . . . good-time fix provision." *Id.* at 11. And he points to the legislative history of the act, which he contends shows that the good time credit amendment was intended to be effective immediately. *Id.* at 12. But while it is sympathetic to Shipp's position, the Court cannot agree with his interpretation of the Act. The statutory text clearly points to a single possible interpretation, which trumps any contrary indication of Congressional intent or in the Act's legislative history. It may be that Section 102(b)(2) was inartfully drafted, and does not reflect what Congress intended in amending 18 U.S.C. § 3624(b). But even if that were the case, "[i]t is beyond [the Court's] province to rescue Congress from its drafting errors, and to provide for what [the Court] might think . . . is the preferred result." *Lamie v. U.S. Tr.*, 540 U.S. 526, 542 (2004) (quoting *United States v. Granderson*, 511 U.S. 39, 68 (1994)). Having determined that Section 102(b)(1)(A) is not yet effective, and thus that Defendants are not unlawfully failing

to comply with their obligations under 18 U.S.C. § 3624(b), the Court finds that Shipp's claim is unlikely to succeed on the merits and it denies his emergency motion for injunctive relief.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's emergency motion for a temporary restraining order and preliminary injunction (ECF No. 2) is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 9, 2019                                             RUDOLPH CONTRERAS
                                                                          United States District Judge